IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL CASE NO. 1:18-MJ-343 |
| | ) | |
| ANTHONY CACCAMO, | ) | **Under Seal** |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND SUMMONS

I, Paul Altenburg, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I make this affidavit in support of an application for a complaint and summons.

2. I am a Special Agent with the U.S. Department of Homeland Security ("DHS"), Office of Inspector General ("OIG"), and have been since May 2017. I have been employed as a Special Agent for approximately eight years. I attended and graduated from the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center in Glynco, Georgia. I have conducted investigations regarding fraud, public corruption, weapons trafficking and drug smuggling. Prior to my career with the DHS OIG, I was employed as a Special Agent with the Environmental Protection Agency, OIG, and Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). In connection with my duties as a Special Agent, I have testified in judicial proceedings and prosecutions for violations of various federal laws. I work closely with agents of the DHS OIG community as well as a number of other federal, state, and local agencies. I have training in the preparation, presentation, and service of

criminal complaints, and have been involved in the investigation of numerous types of offenses against the United States. I have also been trained in the preparation, presentation, and service of arrest and search warrants, and have executed both arrest warrants and search warrants in previous cases.

3. As a federal agent, I am authorized to investigate violations of laws of the United States and as a law enforcement officer, I am authorized to execute arrest warrants issued under the authority of the United States.

4. The statements contained in this affidavit are based on my experience and background as a DHS OIG Special Agent and on information obtained during the course of my investigation. I submit this affidavit for the limited purpose of establishing probable cause in support of this application for a complaint and summons, and therefore, this affidavit does not contain every fact gathered during the investigation. Additionally, unless otherwise noted, wherever in this affidavit I assert that an individual made a statement, that statement is described in substance, and in part, and is not intended to be a verbatim recitation of the entire statement.

## **SUBJECT**

5. ANTHONY CACCAMO ("CACCAMO") is the subject of this investigation. CACCAMO currently resides in Flushing, New York. I have confirmed his personal identification information by querying records databases and by conducting surveillance. I have interviewed CACCAMO in person two times, including one occasion in which he produced a signed confession of his criminal activities, and reviewed records associated with the internet and wireless services registered in his name, as well as forensic evidence found on devices and internet applications he used in the commission of the offense described below.

2

## RELEVANT STATUTE

6. Title 18, United States Code, Section 2261A(2), provides in relevant part:

Whoever . . . with the intent to kill, injure, harass, intimidate, or place under surveillance with intent to kill, injure, harass, or intimidate another person, uses . . . any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that –

\* \* \*

(B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress . . .

shall be punished as provided in section 2261(b) [of Title 18].

## PROBABLE CAUSE

7. From June 2017 through the present, state and federal law enforcement agencies have been investigating allegations of harassing messages V.B. and her husband, CACCAMO, told authorities they had received from unfamiliar telephone numbers. The two claimed that the text messages had been sent from a DHS employee with whom V.B. had had a sexual relationship ("DHS employee") and another person (hereinafter, "K.P.") with whom V.B. also had had a sexual relationship. Based on the DHS OIG investigation, there is probable cause to believe that CACCAMO sent the messages using certain internet applications to hide his identity, with the intention of harassing and intimidating V.B., and with the intention of placing her under surveillance. The following represents a summary of the facts relevant to establishing probable cause for a criminal complaint and summons.

### Initial Complaints Filed by V.B.

8. On June 8, 2017, V.B. filed a telephonic complaint with the DHS OIG Hotline. In her complaint, V.B. alleged that the DHS employee, who V.B. was aware had a background in

3

cyber security, had been sending her harassing messages; had hacked into her iPhone and iCloud accounts; and had threatened to release her personal information.

9. V.B. informed the DHS OIG that she had previously reported these allegations to the Fairfax County Police Department ("FCPD") and the Federal Bureau of Investigation ("FBI") in June 2017. The DHS OIG contacted the FBI to obtain records of V.B.'s allegations and learned that the FBI did not have any reports associated with her allegations. The DHS OIG subsequently obtained and reviewed the FCPD reports related to V.B.'s allegations. After reviewing the material, the DHS OIG began its own investigation into the allegations.

### Initial Interviews of V.B. and CACCAMO

10. On June 19, 2017, V.B. and CACCAMO visited the DHS OIG Washington Field Office, in Arlington, Virginia to report receipt of harassing messages and phone calls from the DHS employee. V.B. and CACCAMO were interviewed separately, and each described to your Affiant a series of threatening and harassing text messages and phone calls they had received on their cell phones from various unknown phone numbers beginning around March 2017. Both V.B. and CACCAMO provided the DHS OIG screenshots of the threatening text messages, which contained the phone numbers associated with the messages.

11. At their June 19, 2017 meeting with DHS OIG investigators, V.B. and CACCAMO alleged that the DHS employee had "hacked" their Apple iPhones and had improperly accessed and made changes to their iCloud accounts. V.B. provided a screenshot and email messages she received from Apple documenting various unauthorized changes to her iCloud account from April 2017 to June 2017. V.B. consented to allow the DHS OIG, Digital Forensic and Analysis Unit (DFAU) to collect a forensic image of her personal iPhone (703)

XXX-XX72. However, CACCAMO declined to provide consent, and no image of his phone was acquired at that time.

12. During V.B.'s June 19, 2017 meeting with DHS OIG investigators, V.B. disclosed that she and CACCAMO were in an "open" relationship; that she lives in Northern Virginia; and that CACCAMO lives in the New York City area. V.B. stated that she met the DHS employee via the mobile dating application Tinder. V.B. and the DHS employee went on approximately two dates and had sex. V.B. stated the threatening and harassing behavior began after she ended the relationship with the DHS employee. V.B. advised investigators that the phone number used when she first started speaking with the DHS employee was (772) XXX-XX78. V.B. told investigators that, on May 12, 2017, V.B. reset her iPhone and requested a new phone number (703) XXX-XX72 with the hope of ending receipt of the harassing messages and to undo the "hacking" of her iCloud account. V.B. stated that she did not share her new phone number with the DHS employee, but that the harassing and threatening messages continued. After her initial meeting with DHS OIG investigators, V.B. continued to provide updates to investigators about harassing messages she received, up through April 6, 2018, and provided her personal phone for further forensic examination on April 6, 2018.

13. During CACCAMO's meeting with DHS OIG investigators on June 19, 2018, he stated that he and V.B. were in an "open" relationship and that he had also received threatening messages on his phone, which he said were sent from the DHS employee with whom his wife had had a sexual relationship. CACCAMO stated that he suspected that the DHS employee had hacked into CACCAMO's iCloud account because CACCAMO had received alerts on his iPhone that his account had been accessed from various cities when he was not in those

5

locations. Neither CACCAMO nor V.B. provided an explanation or theory on how they thought the DHS employee had obtained CACCAMO's phone number.

14. DHS OIG investigators learned during their investigation that V.B. resides in Falls Church, Virginia, within the Eastern District of Virginia, and that CACCAMO resides in Flushing, New York.

### Messages Caccamo Claimed to Have Received from the DHS Employee

15. On June 20, 2017, following his initial meeting with DHS OIG investigators, CACCAMO provided the DHS OIG screenshots of text messages he claimed to have received on his personal cell phone, (646) XXX-XX97, on May 12, 2017, from the DHS employee. The following is an excerpt of the messages[1] he provided to the DHS OIG:

> **571-350-9587:** *Hey, this is Antony, correct?*
> **Caccamo:** *Marc Antony to be exact, who is this?*
> **571-350-9587:** *Antony Coccamo?*
> **Caccamo:** *Close enough lol yea*
> **571-350-9587:** *Call me Katie.*
> **Caccamo:** *As in my cousin who is getting married in a month?*
> **571-350-9587:** *Not exactly. You are a nice guy and I think you should know this. Viola is hooking up with someone.*
> **Caccamo:** *Ohh are you the guy with "secret info" from a month ago. I remember you*
>
> \* \* \*
>
> **571-350-9587:** *Ask her how she fucked a 32 year old guy a few months ago. And how she still hangs out with him quite frequently.*

---

[1] Please note that the excerpts of text messages in this affidavit have been reproduced with the original typographical, grammatical, and spelling errors.

6

16. On June 20 2017, the DHS OIG identified (571) 350-9587 as a number associated with a company called Pinger located in San Jose, California.

17. Pinger's website provides that it is a company that makes applications ("apps") for smartphones and internet-capable devices. One of its products, the Sideline app, allows users to send and receive phone calls and texts from a different phone number than the one originally assigned to their mobile device. Pinger's Textfree app similarly allows users to choose a phone number that can be used to send or receive calls and texts on an internet-capable device.

18. On June 28, 2017, in response to a subpoena, Pinger provided customer information, call data records, internet protocol ("IP") log data, and text message logs associated with the phone numbers (571) 350-9587 and (571) 207-9807 – phone numbers that CACCAMO and V.B. claimed had sent them harassing and threatening messages. The records showed that both telephone numbers had used the IP address 74.108.216.86 to send text messages or to access the Pinger accounts from January 1, 2017 through June 20, 2017.

19. The DHS OIG subsequently learned that Verizon provides service to IP address 74.108.216.86. Verizon provided customer records, pursuant to legal process, that indicated that the subscriber of the account associated with that IP address was an individual named Anthony Caccamo; that the user name associated with the account is "anthony.caccamo"; and that IP address 74.108.216.86 was assigned to the physical address 29-29 162 St., Flushing, New York 11358.

20. On August 21, 2017, in response to a subpoena requesting information associated with phone number (646) XXX-XX97, the telephone number CACCAMO had identified to investigators as his, AT&T provided the following subscriber information:

7

**Billing Party**
Account Number: 51XXXXXXXX49
Name: ANTHONY CACCAMO
Billing Address: 2929 162ND ST, FLUSHING NY 11358
Account Status: Active

21. On February 27, 2018 and March 16, 2018, DHS OIG investigators conducted surveillance outside of 29-29 162 St., Flushing, New York (the "residence"). Agents observed CACCAMO exit the residence and enter into a gray Lexus and depart the area. A search through records databases for the name "CACCAMO" returned information confirming that the address of the residence is associated with CACCAMO.

22. As a result, there is probable cause to believe that the harassing text messages CACCAMO claimed were sent to him by the DHS employee were ones he sent to himself using the Pinger application while he was connected to his Verizon internet account.

**Harassing Messages sent from (571) 350-9587 to V.B. from May 26, 2017 through June 8, 2017, Threatening Adverse Immigration Consequences and Hacking**

23. During her June 19, 2017 interview, V.B. alleged that the DHS employee had sent her text messages threatening to affect her immigration status and threatening to release personal information he had accessed by hacking into her devices or accounts.

24. Forensic examination of V.B.'s phone revealed that, between May 26, 2017 and June 8, 2017, V.B. received a series of messages threatening adverse immigration consequences and stating that a "rootkit" – or malicious code giving unauthorized access – had been installed on her phone and would be used to release sensitive personal information. One of the messages also contained a Social Security Number that the DHS OIG later confirmed is V.B.'s true Social Security Number. The following are excerpts of those messages:

June 7, 2017

**571-350-9587:** *all your personal information is about to be leaked at 9pm EST...get ready...*
**V.B.:** *You promised to stop*
**571-350-9587:** *I changed my mind... I want your life destroyed...your only option at this point is to give up... stage 5 is being planned right his moment... any family you have outside of the USA will be denied at the border.... you fucked with the wrong man*
**V.B.:** *I don't understand how I fucked you up. You never asked me if I was single, so it's not like I lied to you. I also don't understand how I "ruined you reputation". I never met any of your coworkers.*

\* \* \*

**571-350-9587:** *at least if you were semi pretty and had a nicer body, maybe I wouldn't be as vengeful...no apologies will help... you, your family, and anybody close to you will be effected...working for the USA, I value my country...we don't don't need disease ridden whorebags effecting our great nation...get out or I will get you out...you are already not allowed back in...your job will be warned of your criminal history and your current criminal history...*
**571-350-9587:** *You are disgusting...physically and mentally...you need to be dead...LEAVE....I will make sure you lose your job...I have already made sure no job will (1/2)*
**571-350-9587:** *sponsor your visa...I WIN....(2/2)*

\* \* \*

**571-350-9587:** *You're fucked literally and figuratively... don't be surprised.... There is WAY more to come...*
**571-350-9587:** *You're a complete moron...have access to all your computers and laptops now...*

25. Through its investigation, DHS OIG investigators learned that V.B. is a legally present visa holder, but not a citizen, of the United States.

26. Review of subpoenaed Verizon records showed that V.B.'s iPhone was connected to a Verizon Network switch located in or around Chantilly, Virginia, within the Eastern District of Virginia, when she received these messages.

27. As described above in Paragraphs 18 and 19, law enforcement determined that the phone number (571) 350-9587 is associated with Pinger, and that the IP address used to send messages from that telephone number from January 1, 2017 through June 20, 2017 was

9

74.108.216.86, an IP address serviced by Verizon and registered to CACCAMO at his Flushing, New York residence. As a result, there is probable cause to believe CACCAMO sent the harassing messages described in Paragraph 24.

### Harassing Messages Sent to V.B. from September 7, 2017 through 13, 2017 Suggesting DHS Employee Was Conspiring with K.P. to Frame V.B. for Crimes and to Release Intimate Photographs of V.B.

28. On September 9, 2017, V.B. spoke to investigators about additional harassing messages that she believed were from K.P., a man she had met in December 2016 and with whom she had had a sexual relationship. V.B. informed the DHS OIG that she had given K.P. her previous phone number when they met, but that she had not provided him with the new phone number she had obtained in May 2017. She stated that she was, nonetheless, receiving harassing messages that, based on the content of the messages, she believed were from K.P.

29. With her consent, the DHS OIG performed a forensic examination of her personal iPhone, which was then assigned the number (703) XXX-XX72.

30. Examination of V.B.'s phone revealed that, on September 6, 2017 through September 9, 2017, V.B. received a series of messages appearing to suggest that K.P. was conspiring with the DHS employee to frame V.B. for computer-hacking-related crimes and to release intimate photographs of V.B. to her place of employment if V.B. did not divorce CACCAMO. The following is an excerpted reproduction of those text messages:

#### September 6, 2017
**785-713-6538:** *Do you want each of your family's to see your sex tapes? Thats only a fraction of what's to come. I wish I could prevent it but there's only one person who can. You.*
**785-713-6538:** *Babe. Ignoring me will make it worse. You wouldn't like my buddy to alter every IP address and source phone number to be under your name now would you, Mrs. B[XXXXXX]? How would it look if you attempted to access private company servers? Or*

> *worse? The possibilities are limitless. That's an ingenious way to get you out of the country. It will work.*
>
> **September 7, 2017**
>
> **785-713-6538:** *I was informed that all IP addresses and calls have now been altered and updated to lead to your unique serial number on your iPhone. Trace this number (1/3)*
> **785-713-6538:** *and see your name appear. This can all stop if you do the right thing. I am on your side and I am trying to help you but you are too naive. Please heed my (2/3)*
> **785-713-6538:** *advice.(3/3)*
> **785-713-6538:** *Did you block me again? My buddy will take over you and your husband's phones. If you do not break it off, we will do it on our own by way if you. It will not be pretty. Answer me. You don't want your nude pictures to be leaked to your place of business, do you?*

31. Subsequent review of subpoenaed Verizon records showed that V.B.'s iPhone was connected to a Verizon Network switch located in or around Chantilly, Virginia, within the Eastern District of Virginia, when she received the messages shown in Paragraph 30.

32. The DHS OIG investigation revealed that phone number (785) 713-6538 is associated with Pinger.

33. Subpoenaed records from Pinger showed that on September 7, 2017, the IP address used to send the harassing text message to V.B. was 74.108.216.86. Review of subpoenaed records from Verizon for this IP address showed that the IP address was registered to CACCAMO, at the address of his residence. Therefore, there is probable cause to believe that the harassing messages V.B. received in early September 2017 were sent by CACCAMO, not K.P.

### Investigation of DHS Employee and False Report Filed by CACCAMO in DHS Employee's Name

34. As part of its investigation, on November 16, 2017, DHS OIG agents interviewed the DHS employee. The DHS employee confirmed that he knew V.B. and stated that he ended contact with her once he learned, through an unsolicited text message from an unfamiliar phone

number, (571) 350-9587, that V.B. was married. He denied sending any harassing messages. The DHS employee consented to allow the DHS OIG, DFAU to collect a forensic image acquisition of his personal iPhone.

35. As described in Paragraphs 16 through 18, phone number (571) 350-9587 is a number that the DHS OIG determined, through Pinger and Verizon records, is associated with the residence and person of CACCAMO.

36. The DHS employee stated that a false police report had been filed in his name to ICE HSI. Investigators obtained evidence that on June 1, 2017, the HSI Tipline public website received Tip-55043732273, which provided V.B.'s address and alleged that V.B. was involved in narcotics smuggling. The Tipster/Source field of the entry contained the name of the DHS employee and the address of his parents. The DHS employee stated that he did not file this tip with the HSI Tipline and stated that his parents' address appears in internet search results when his name is queried.

37. During the DHS OIG's investigation into the DHS employee, which included an examination of the DHS employee's work emails and a forensic examination of his personal cell phone, the investigators found no evidence suggesting that the DHS employee had sent the threatening and harassing messages to CACCAMO or V.B.

38. The DHS employee stated that the allegations surrounding the messages V.B. received and the false police report someone had filed in his name affects his background check, which is a requirement for his employment.

39. During a consensual interview with DHS OIG investigators on March 27, 2018, CACCAMO admitted that he had sent the false tip to the HSI Tipline in the DHS employee's name.

**Investigation of K.P. and Emails CACCAMO Sent to K.P.'s Employer**

40. On November 20, 2017, federal agents interviewed K.P. K.P. stated that he had had a sexual relationship with V.B., but denied sending harassing messages. K.P. allowed the DHS OIG, DFAU to acquire a forensic image of his personal iPhone, but due to technical problems, DHS OIG investigators were unable to acquire this forensic image.

41. On November 21, 2017, K.P.'s employer received an email message from a "Brendan Waterson" alleging that K.P. had been harassing and stalking his niece. K.P.'s human resources department responded to the email seeking additional information. "Brendan Waterson" responded that there was an ongoing police investigation.

42. V.B. informed the DHS OIG that she did not have an uncle named "Brendan Waterson" and that she was unaware of any family members sending emails to K.P.'s employer.

43. On March 27, 2018, during an interview with DHS OIG investigators, CACCAMO admitted to sending the email to K.P.'s employer that falsely accused K.P. of stalking and harassing V.B.

**Harassing Messages sent to V.B. in March 2018 that
Match Those Found on CACCAMO's iPhone**

44. On March 26, 2018, V.B. called the DHS OIG to report harassing messages she had received earlier that month from phone number (703) 634-6655. V.B. provided the messages to the DHS OIG. The messages contained threats to harm V.B.'s immigration status; threats to

13

harm V.B.'s career; and suggestions that V.B.'s electronics were being monitored. The following are excerpts of those messages:

### March 9, 2018
**703-634-6655:** *I demand something from you. Or else I will release your Telegram conversations. No app is safe for you. My keylogger is omniscient.*
**703-634-6655:** *Your private conversations will be released March 13th, 2018 to your firm and colleagues pending further review of your data.*
**703-634-6655:** *[PARTIAL IMAGE OF THE SIDE OF A FEMALE FACE]*
**703-634-6655:** *[PARTIAL IMAGE OF THE SIDE OF A FEMALE FACE]*
**703-634-6655:** *I will assume you are not receiving my messages, rather than assume you choose to ignore me. I will have no choice but to contact you at your place of business. Look for a special email from yours truly. Have a good day.*

### March 13, 2018
**703-634-6655:** *Stage 7 has commenced. Your career will be over. Mark my words.*

### March 17, 2018
**703-634-6655:** *I am monitoring your top contacts, on all your apps. Nothing you have is secure. I have your login information for everything, and always will. You can run, you can hide, but I will find you. You can change your carrier, number, usernames, and passwords to no avail. Your top contacts are compromised. I will strike them when you least expect it. Anyone that comes into contact with you will surely regret their decision. The only option you have is to get it if my country. I have confirmed you are receiving these messages, ignore as you wish, but that sparks my anger. Have a good day.*
**703-634-6655:** *I have traced your top contacts and have located your parents, who have now been compromised on each device they own. They will never be allowed to enter my great country. Get your filthy ass out of here.*

### March 25, 2018
**703-634-6655:** *Stage 8 Complete. Enjoy the final months of your career.*
**703-634-6655:** *Further, your family is prohibited from entering the U.S. They will be denied at the gate.*

45. On March 27, 2018, DHS OIG investigators executed a search warrant at CACCAMO's residence. CACCAMO identified his iPhone, with phone number (646) XX-XX97, and provided investigators with his iPhone password so that it could be examined. DHS OIG agents found on CACCAMO's iPhone an app called Textnow – which, similar to the apps Textfree and Sideline – allows an individual to send and receive text messages using a phone

14

number that is different from the phone's true phone number. Within the Textnow app that was installed on CACCAMO's phone, investigators found the messages sent to V.B. that are shown above in Paragraph 44.

**Execution of Search Warrant at CACCAMO's Residence and Voluntary Interview**

46. During the execution of a federal search warrant on March 27, 2018, DHS OIG agents seized the following from CACCAMO's bedroom:

   a. Apple iPhone 6, model: A1549, International Mobile Equipment Identity (IMEI): 354407062953228 (CACCAMO's previous iPhone)

   b. Apple iPhone 7, model: A1778, IMEI: 359205076578485, 128GB, Phone Number: (646) 509-3097 (CACCAMO's current phone)

   c. Apple iMac, model: A1418 21.5", S/N: C02JX15VDNCR

   d. Acer Chrome computer– number EA0WA004010

47. During the search, CACCAMO voluntarily provided the password to the Apple iMac computer, his current iPhone, and the Acer Chrome computer. CACCAMO attempted to provide the password for the iPhone 6, but stated he could not recall the correct passcode.

48. Examination of those devices revealed that CACCAMO had used apps that allow a user to hide his true telephone number and make it appear as though he was using a different telephone number when texting or calling others. Investigators also identified data on CACCAMO's iPhone 6 that appeared to be a download of V.B.'s Apple iCloud information, which provided CACCAMO with real-time access to information from her Apple accounts and/or devices. Furthermore, examination of the devices revealed that CACCAMO had sent emails to V.B.'s employer between November 21, 2017 and March 13, 2018, alleging that V.B.

was under investigation by DHS, that she had violated her the company's ethics policy, and that she had improperly shared sensitive information.

49. During execution of the search warrant at his residence, CACCAMO voluntarily spoke with federal agents. CACCAMO stated that in February 2017, he saw photos of V.B. and K.P. on Facebook that made him upset and suspicious that V.B. was having sex with other men. CACCAMO explained that in March 2017, he used V.B.'s thumb to unlock her iPhone while she was asleep. CACCAMO then reviewed V.B.'s text messages and modified V.B.'s iCloud backup email address so that he could monitor and remotely access V.B.'s Apple iCloud data. CACCAMO stated he wanted to make V.B. feel bad after he learned of her relationships with other men. CACCAMO also admitted to using apps that allowed him hide his true telephone number and make it appear as though his texts and calls were coming from other phone numbers. Using the apps, CACCAMO was able to text V.B., pretending to be the DHS employee or K.P. CACCAMO admitted that he sent messages to V.B. threatening to harm her immigration status and to make her believe her personal information had been hacked. CACCAMO also admitted to sending emails to V.B. and K.P.'s places of employment. CACCMO stated that he was aware V.B. had reported the harassing messages to various law enforcement agencies. CACCAMO voluntarily provided a handwritten, sworn confession summarizing his knowledge of his actions and his intentions.

50. My investigation has shown that there is probable cause to believe that ANTHONY CACCAMO violated 18 U.S.C. § 2261A(2) by using interactive computer services, that is internet applications that allowed him to send harassing and intimidating text messages

from a variety of phone numbers, with the intent and expectation of causing substantial emotional distress.

51. Based upon the foregoing, I respectfully request that this Court issue a complaint and summons for ANTHONY CACCAMO.

Respectfully submitted,

Paul Altenburg
Special Agent
Department of Homeland Security
Office of Inspector General

Approved by: AUSA Laura Fong

Subscribed and sworn to before me this 13 day of July 2018.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge

The Honorable Michael S. Nachmanoff
United States Magistrate Judge

17